IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JANE D. DICOCCO, MD,
        Plaintiff,

v.                                                        Civil Action No. 3:19-cv-159

WILLIAM P. BARR, Attorney General,
United States Department of Justice,
        Defendant.

## OPINION

In 2014, Dr. Jane D. DiCocco, a 67-year-old female, accepted a job as a psychiatrist for the United States Bureau of Prisons ("BOP"). The BOP required DiCocco, like all employees, to take a physical abilities test ("PAT"). DiCocco failed the PAT. Although BOP regulations allowed her to retake the test within 24 hours, DiCocco declined to do so. The BOP told her that if she did not resign, it would terminate her employment. DiCocco resigned.

DiCocco has sued the U.S. Department of Justice ("DOJ") for gender discrimination under Title VII of the Civil Rights Act of 1964 and for age discrimination under the Age Discrimination in Employment Act ("ADEA"). She alleges that the PAT has a disparate impact on females and employees over the age of 40. The DOJ has moved to dismiss, arguing that (1) sovereign immunity bars the ADEA claim, (2) DiCocco lacks standing to assert her claims, and (3) DiCocco has failed to state a claim as to both the Title VII and the ADEA claims.

Because DiCocco lacks standing to assert her claims, the Court will grant the DOJ's motion and will dismiss this case without prejudice.

# I. FACTS ALLEGED IN THE COMPLAINT

In July, 2014, the BOP hired DiCocco as a psychiatrist at the Federal Correctional Complex in Petersburg, Virginia. Although the BOP has a maximum age requirement of 36 years old, it exempts medical officers, such as psychiatrists, from the age requirement.

Notwithstanding the age exception, the BOP requires all new hires—regardless of age, gender, or position—to pass a PAT. The BOP imposes this requirement because "all positions in correctional institutions are hazardous duty law enforcement positions, [so] all employees are responsible for maintaining security in the event of an emergency." (Dk. No. 1, ¶ 12.) The PAT tests "'the five most important physical abilities to correctional work,' which are 'dynamic strength,' 'gross body equilibrium,' 'gross body coordination,' 'stamina,' and 'explosive strength.'" (*Id.* ¶ 8.) All employees must complete each test must within a specified time.

Specifically, the PAT requires each employee to (1) drag a 75-pound dummy continuously for 3 minutes for at least 694 feet, (2) climb a ladder to retrieve an object in 7 seconds, (3) complete an obstacle course in 58 seconds, (4) run a quarter mile and handcuff an individual in 2 minutes and 35 seconds, and (5) climb three tours of stairs in 45 seconds while wearing a 20-pound weight belt. "The PAT makes no provision for the physiological differences between males and females, [or] for the physiological differences of older individuals." (*Id.* ¶ 14.)

An employee must receive an overall passing composite score to pass the PAT. Thus, an employee who falls below average on one or more tests can compensate for the deficiency by scoring above average on the other tests. Each employee need only pass the PAT once, and the BOP does not retest any employee after that employee successfully completes the PAT. If an

employee fails the PAT on the first try, BOP guidelines allow that employee to retake the PAT within 24 hours.

The BOP maintains statistics about PAT pass rates. Between 2012 and 2015, 9,999 applicants took the PAT. Of those applicants, 99.59 percent (9,958 applicants) passed the PAT, while 0.41 percent[1] (41 applicants) failed it. Males comprised 7,176 of applicants, with a pass rate of 99.26 percent[2] (7,123 applicants). Females comprised 2,823 of applicants, with 98.65 percent (2,785 applicants) passing the PAT. Although females comprised 28 percent of the total applicants, approximately 93 percent (38 applicants) of the applicants who failed the PAT were female.

As for age, 8,397 of the applicants were under 40 years old, while 1,602 were over 40. 99.8 percent[3] (8,380 applicants) of the under-40 applicants passed the PAT, while 98.5 percent (1,578 applicants) of the over-40 applicants passed the PAT. Although the over-40 applicants comprised 16 percent of the total applicants, they comprised 47 percent[4] (24 over-40 applicants) of those who failed the PAT. Those 24 applicants were between the ages of 42 and 67.[5]

Because DiCocco failed to finish all components of the PAT during her initial test within the prescribed times, she failed the PAT. BOP guidelines allowed her to take the PAT a second time within 24 hours. She declined to do so, "fearing that in her exhausted physical condition,

---

[1] DiCocco alleges that "(0.415)" applicants failed the PAT. The Court interprets that to mean that 0.415 percent failed the PAT, not 41.5 percent. Even so, 0.415 percent reflects a calculation error, as 41 applicants out of 9,999 totals 0.410 percent.

[2] DiCocco incorrectly alleges that 99.96 percent of male applicants passed the PAT.

[3] DiCocco miscalculates the percentage, alleging that 88.8 percent of the under-40 applicants passed the PAT.

[4] DiCocco incorrectly alleges that applicants over 40 years old comprise 59 percent of those who failed the PAT.

[5] Although DiCocco sets forth various statistics breaking out the age and sex of the applicants, DiCocco alleges that the BOP did not specify the sex and specific age of the over-40 applicants who failed the PAT.

3

she would be unable [to] complete it in a satisfactory time during the second attempt." (*Id.* ¶ 15.) After she declined, the BOP informed DiCocco that, "unless she resigned, her employment with BOP would be terminated for failure to pass the PAT within the required times." (*Id.* ¶ 16.) On April 7, 2015, DiCocco resigned.

DiCocco filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging disparate treatment and disparate impact based on age and sex. After the EEOC denied her complaint and the DOJ issued a final decision accepting the decision of the EEOC administrative judge, DiCocco filed this lawsuit. She alleges (1) gender discrimination in violation of Title VII; and (2) age discrimination in violation of the ADEA.[6] The DOJ has moved to dismiss the action based on sovereign immunity, lack of standing, and failure to state a claim.

---

[6] She proceeds under a disparate impact theory for both claims.

## II. DISCUSSION[7]

A court must first decide whether it has subject matter jurisdiction before deciding the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1986). A court lacks jurisdiction when sovereign immunity bars a claim. *See Kramer v. United States*, 843 F. Supp. 1066, 1068 (E.D. Va. 1994). Likewise, a court lacks jurisdiction when a party lacks standing to bring the case. *See AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 F. App'x 244, 247 (4th Cir. 2006). A court may choose the order in which it will decide jurisdictional questions. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999). The Court, therefore, will first address whether DiCocco has standing to assert her claims.

Federal courts have jurisdiction over "cases" and "controversies." U.S. Const., Art. III, § 2. To sue in federal court, a plaintiff must establish Article III standing by showing a

---

[7] A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "[W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged. On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). The parties or the Court may raise questions of subject matter jurisdiction at any time. *Republic Bank & Tr. Co. v. Kucan*, 245 F. App'x 308, 312 (4th Cir. 2007).

A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

"'concrete and particularized' injury that is fairly traceable to the challenged conduct of the defendant and is likely to be redressed by a favorable judicial decision." *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The DOJ argues that DiCocco has not alleged an adverse employment action caused by the alleged discriminatory practice. Accordingly, the Court will consider whether DiCocco has sufficiently alleged an injury in fact and causation.[8]

### *A. Injury in Fact*

To allege "an actionable injury" in Title VII and ADEA disparate impact cases, a plaintiff must sufficiently plead that she suffered an adverse employment action. *Chaplin v. Du Pont Advance Fiber Sys.*, 293 F. Supp. 2d 622, 626-27 (E.D. Va. 2003); *see Young v. Covington & Burling LLP*, 740 F. Supp. 2d 17, 21 (D.D.C. 2010) ("In the context of Title VII litigation, the constitutional requirement of an injury in fact, is construed as an adverse employment action." (internal quotations and citation omitted)).[9] Mere speculation that a certain action could result in reprimand or a job loss "is insufficient to confer standing." *Chaplin*, 293 F. Supp. 2d at 627; *cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) ("[R]espondents cannot manufacture

---

[8] Although not entirely clear, the DOJ appears to argue that DiCocco has not satisfied either the injury in fact or the causation prongs of Article III standing. *See Lujan*, 504 U.S. at 560-61. The DOJ has not challenged the redressability requirement.

[9] *See also Tresvant v. Oliver*, No. DKC 12-0406, 2013 WL 598333, at *4 (D. Md. Feb. 15, 2013) ("To the extent that the complaint could be construed as seeking to vindicate Plaintiff's own legal rights, he fails to satisfy Article III standing requirements because he does not allege any injury that is 'concrete and particularized' or 'actual or imminent.' . . . [T]he mere possibility that Plaintiff might lose his job or be forced to take time off as a result of having to undergo PAT is insufficient to establish constitutional standing."); *cf. Aliotta v. Bair*, 614 F.3d 556, 566 (D.C. Cir. 2010) ("Under either a disparate treatment or disparate impact theory of discrimination, plaintiffs must show they suffered an adverse employment action.").

6

standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending.").

DiCocco alleges that the BOP forced her to resign after she failed the PAT. "[A]n employee's voluntary resignation does not, as a matter of law, constitute an adverse employment action." *High v. R & R Transp., Inc.*, 242 F. Supp. 3d 433, 446 (M.D.N.C. 2017). But an employee's resignation may amount to a constructive discharge in certain circumstances. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186–87 (4th Cir. 2004).

Constructive discharge has two elements. "First, a plaintiff must show that [her] working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign. Second, a plaintiff must actually resign because of those conditions." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 211–12 (4th Cir. 2019) (quotations and citations omitted); *see also Alba v. Merrill Lynch & Co.*, 198 F. App'x 288, 294 (4th Cir. 2006). "Constructive discharge claims are held to a high standard, and even truly awful working conditions may not rise to the level of constructive discharge." *Ratcliff v. Spencer*, No. 1:18-CV-757, 2019 WL 2375131, at *5 (E.D. Va. June 4, 2019). "Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994). Further, to determine whether an individual involuntarily resigned, courts must consider "the circumstances of the resignation to determine whether the employee was denied the opportunity to make a free choice." *Bauer v. Holder*, 25 F. Supp. 3d 842, 852 (E.D. Va. 2014), *vacated sub nom. on other grounds in Bauer v. Lynch*, 812 F.3d 340 (4th Cir. 2016).[10]

---

[10] *See also Bauer*, 25 F. Supp. 3d at 852 (explaining that courts may consider "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice [s]he was given; (3) whether the employee was given a reasonable time in

7

Citing to only one allegation in the complaint,[11] DiCocco contends that "[t]here is no hint ... that [she] was fired for her declining a second attempt to pass the PAT." (Dk. No. 9, at 12.) But DiCocco also acknowledges that "[t]he BOP guidelines permit a new hire to retake the PAT within 24 hours" and that she "*declined.*" (Dk. No. 1, ¶ 15 (emphasis added).) Only after alleging that she declined to take the PAT a second time does DiCocco allege that the BOP gave her the option between resignation or termination. Thus, DiCocco alleges that she had a third option other than termination or resignation—the chance to take the PAT a second time—leaving DiCocco with "the opportunity to make a free choice."[12] *Bauer*, 25 F. Supp. 3d at 852.

Moreover, while DiCocco says she was tired, it does not follow that she would have failed the PAT on her second try. The majority of older people and women pass the test. Thus, her decision to resign rather than retake the exam and potentially fail a second time "is speculative and, as such, is insufficient to confer standing." *Chaplin*, 293 F. Supp. 2d at 627.

Accordingly, DiCocco has not alleged that she suffered an adverse employment action, and therefore, has failed to show an injury in fact. *Young*, 740 F. Supp. 2d at 21 (construing "the constitutional requirement of an injury in fact . . . as an adverse employment action").

---

which to choose; and (4) whether the employee was permitted to select the effective date of resignation"); *Allard v. Holder*, 840 F. Supp. 2d 269, 277 (D.D.C. 2012) ("A plaintiff must show the following [to establish an involuntary resignation]: [1] an agency imposes the terms of an employee's resignation, [2] the employee's circumstances permit no alternative but to accept, and [3] those circumstances were the result of improper acts of the agency." (quotations omitted)).

[11] DiCocco focuses on her allegation that she "was informed that unless she resigned, her employment with BOP would be terminated for failure to pass the PAT within the required times." (Dk. No. 1, ¶ 16.)

[12] DiCocco also alleges that she declined to take the PAT a second time because she "fear[ed] that in her exhausted physical condition, she would be unable complete it in a satisfactory time during the second attempt." (Dk. No. 1, ¶ 15). That fear, however, does not rise to conditions so intolerable that a reasonable person would resign. *See Mozingo v. S. Fin. Grp., Inc.*, 520 F. Supp. 2d 733, 742 (D.S.C. 2007) ("While his fear that he was going to be fired may have been reasonable, the fear of being fired does not amount to a constructive discharge."). DiCocco does not allege any other facts to support her claim of constructive discharge.

8

*B. Causation*

The DOJ frames much of its argument in terms of causation, positing that DiCocco has not alleged that the PAT caused her injury. *See Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 577 (6th Cir. 2004) ("[A]n individual plaintiff arguing a disparate impact theory must show that the challenged policy directly disadvantaged [her] in some fashion."). In light of the Court's ruling that DiCocco has not suffered an injury in fact, DiCocco cannot show causation. Moreover, because DiCocco chose to resign rather than retake the exam and face the possibility of termination, her resignation is not "fairly traceable to" DiCocco failing the PAT. *Ansley*, 861 F.3d at 517.

In sum, DiCocco does not have standing, and the Court must dismiss the case.[13]

### III. CONCLUSION

DiCocco does not have standing to assert her claims. Accordingly, the Court will grant the DOJ's motion and will dismiss this case without prejudice. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing . . . must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Order to all counsel of record.

Date: 25 February 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[13] Because DiCocco lacks standing to assert her claims, the Court will not reach the DOJ's arguments regarding sovereign immunity and failure to state a claim. Nevertheless, even if the Court had jurisdiction over this case, DiCocco would need to plausibly plead a constructive discharge to survive a motion to dismiss under Rule 12(b)(6). That analysis would closely mirror the Court's injury in fact analysis.